UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08CV197 TIA |
| ) | |
| V. LEROY YOUNG, M.D., ) | |
| ROBERT CENTENO, M.D., ) | |
| C.B. BOSWELL, M.D., and ) | |
| AESTHETIC SURGERY ASSOCIATES, ) | |
| d/b/a BODY ASTHETIC PLASTIC SURGERY ) | |
| & SKIN CARE CENTER, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the Court on Defendants' Motion and Memorandum to Re-Open Discovery (Docket No. 73). All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Jane Doe filed the instant action against Defendants for improperly disseminating portions of her medical record related to her October 2004, plastic surgery to remove excessive skin due to substantial weight loss. (Plaintiff's Complaint, Docket No. 1, at ¶¶ 9-11, 15-16). Defendants V. Leroy Young, M.D., Robert Centeno, M.D., and C.B. Boswell, M.D. ("medical Defendants"), are physicians and surgeons engaged in the practice of their profession in St. Louis County and provided medical services to Plaintiff. (Id. at ¶¶ 1-3). Defendant Aesthetic Surgery Associates, Inc., d/b/a Body Aesthetic Plastic Surgery & Skin Care Center, Inc. ("Body Aesthetic") is a Missouri corporation and provided medical services to Plaintiff, and doctor Defendants served as employees,

officers, and /or members of Body Aesthetic. (Id. at ¶¶ 4-5). In particular, these materials include Plaintiff's "medical records" and "[p]hotos of Plaintiff [that] were part of the medical records of Plaintiff and were obtained by Defendants for the limited and sole purpose of rendering medical treatments." (Id. at ¶ 11). The photos allegedly "depict Plaintiff in full frontal and posterior naked poses ...." (Id. at ¶ 10). Plaintiff alleges that she apprised Defendants that she did not want her medical records and photos disseminated in any form or medium other than for purposes of medical treatment and that she never consented to the release of the photos. (Id. at ¶¶ 13, 15). Nonetheless, the photos appeared in an April 20, 2006, article published in the Riverfront Times regarding Defendants' plastic surgery medical practice. (Id. at ¶ 17). Plaintiff seeks monetary damages, including punitive damages, from Defendants for their alleged invasion of privacy and intrusion upon seclusion (Count I), invasion of privacy and unreasonable publicity (Count II), breach of fiduciary duty (Count III), wrongful commercial appropriation and exploitation of her image and medical information (Count IV), and negligent, careless and reckless conduct (Count V).

On August 26, 2008, Defendants served a subpoena[1] on non-party Riverfront Times[2] requesting the Riverfront Times to produce the following:

1. A full and complete copy of all documents and/or materials in your

---

[1]When Defendants served their first subpoena, the case was in the early stages of discovery with the discovery deadline of January 15, 2009. The Riverfront Times filed a Motion to Quash and Notice of Deposition (Docket No. 21) on August 28, 2008. Before ruling on the motion to quash, the Court entered an Amended Case Management Order on October 17, 2008, extending the discovery deadline to March 16, 2009, as requested by the parties in the Joint Proposed Amended Scheduling Order (Docket No. 25).

[2]A review of the allegations set forth in Plaintiff's Complaint shows that Defendants' alleged improper dissemination of the photographs contained in Plaintiff's medical records is the heart of the case, not the subsequent publication of the photographs in the Riverfront Times. ( Plaintiff's Complaint, Docket No. 1, at ¶¶ 9-11, 15-16).

> possession, custody or control, used to prepare your article titled "Sultan of Skin: Flesh Insight from an Esteem St. Louis Plastic Surgeon," published in the April 20, 2006 issue of the Riverfront Times, ... including but not limited to: all contents of the file, all correspondence concerning the article or preparation thereof, emails, notes, memoranda, drafts, edits, tapes, recordings, digital copies, transcripts, journals, electronic diaries, and any other relevant material.

(Riverfront Times' Objections and Motion to Quash Subpoena, Docket No. 21, Exh. A at Attachment A).

Riverfront Times filed its Objections and Motion to Quash Subpoena and Notice of Deposition (Docket No. 21) on August 28, 2008, seeking to quash the subpoena and notice of deposition. Riverfront Times argued that the subpoena was overbroad and sought materials that were not original to the Riverfront Times. In relevant part, the Riverfront Times contended that as a non-party to the instant litigation the Riverfront Times should not be required to devote substantial time and resources in responding to the subpoena and producing materials to Defendants that were originally provided by the same Defendants. Further, the Riverfront Times argued the subpoena sought the reporter's notes and work product. The Riverfront Times argued that the qualified journalist privilege prohibited the use of journalists as witnesses and as sources for documentary evidence unless the information sought is critical to the maintenance or heart of the claim, is highly material and relevant, and is unobtainable from other sources. Continental Cablevision, Inc. v. Storer Broadcasting Co., 583 F. Supp. 427, 433-36 (E.D. Mo. 1984). In applying the privilege, the Court must balance the competing interests involved by considering the relevance and materiality of the information, whether the party seeking the information has made reasonable efforts to obtain the information from an independent source, and whether there is truly a need for the information.

In the Order of October 28, 2008, the Court granted the motion to quash finding at that time

other sources of information had not been exhausted. Thereafter, on November 5, 2008, the Riverfront Times filed Objections and Motion to Quash Subpoena and Notice of Deposition Directed to Reporter Kristen Hinman (Docket No. 32), noting that other than the name of the deponent and the date/time set for compliance, the subpoena and notice of deposition was substantially identical to the earlier subpoena served on the reporter's employer, the Riverfront Times, and quashed by the Court on October 28, 2008. Indeed, the Riverfront Times noted how not much has changed with respect of the case since the ruling six days earlier. The Riverfront Times pointed out that the case was in the early stages of discovery with no depositions having been taken, and the recent amended case management order extending the close of discovery to March 16, 2009. The next day, November 6, 2008, the undersigned entered a docket text Order granting the Objections and Motion to Quash Subpoena and Notice of Deposition Directed to Reporter Kristen Hinman and Amended Motion for the reasons set forth in the October 28, 2008 Order.

On March 3, 2009, the parties filed a Joint Motion for Extension of Time to Complete Discovery (Docket No. 56), and the Court granted the motion on March 4, 2009, extending the discovery deadline completion date to March 31, 2009. On March 18, 2009, Plaintiff's counsel issued a Subpoena directed to the Riverfront Times, LLC requesting the Riverfront Times make available for deposition a corporate designee and produce and permit inspection and copying of the following documents on March 31, 2009:

> Image files (electronic and hard copy) used for the publication of the photographs printed on page 21 of the April 20, 2006 edition of the Riverfront Times.

(Exhibit A attached to Objections and Motion to Quash Subpoena and Anticipated Notice of Deposition Directed to Riverfront Times (Docket No. 60)). In relevant part, the Riverfront Times

contended that information should be available from Defendants regarding what information and/or materials Defendants provided to the Riverfront Times, and Plaintiff should be required to fully seek such information from Defendants and any other potential sources before seeking such information from the Riverfront Times. Moreover, with respect to the heart of the matter prong, the Riverfront Times requested the Court to strictly hold Plaintiff to the strictures of the test. Nonetheless, if the subpoena was upheld, the Riverfront Times requested that the deposition be confined solely to the subject of the Riverfront Times receipt and publication of certain photographic image files and specifically exclude information relating to the Riverfront Times' editorial process relating to the content of the story with which the photo(s) appeared.

Where a journalist who is not a party is subpoenaed in a civil case and asked to reveal a confidential source or information received in confidence, the Court must strike a balance between the journalist's privilege and the interest of the litigant seeking the information taking into consideration the materiality, the relevance, and the necessity of the information. To overcome the qualified privilege, the moving party must make a clear and specific showing that the information sought is: (1) highly material and relevant to the underlying claim; (2) necessary and critical to the maintenance of the claim, a/k/a the "heart of the claim" requirement; and (3) unavailable from alternative sources, a/k/a the exhaustion requirement. Continental Cablevision, Inc. v. Storer Broadcasting Co., 583 F. Supp. 427, 432-35 (E.D. Mo. 1984).

The undersigned determined that the qualified privilege should not shield the Riverfront Times from the subpoena by Plaintiff. Unlike the earlier subpoenas issued by Defendants near the outset of discovery requesting testimony and documents regarding the Riverfront Times' news gathering

process,[3] Plaintiff issued the subpoena near the completion of discovery seeking testimony and documents regarding the Riverfront Times' receipt and publication of certain photographic image files. In particular, Plaintiff was not seeking any information relating to the Riverfront Times' editorial process relating to the content of the story with which the photo(s) in question appeared. Indeed, in Plaintiff's Response to the Objections of Riverfront Times to Plaintiff's Subpoena, Plaintiff fully agreed with the Riverfront Times's proposal of limiting the deposition solely to the Riverfront Times' "receipt and use of the photographic image files in question." In particular, Plaintiff sought the production of the actual photographic image files used by the Riverfront Times to generate photo images of Plaintiff appearing on page 21 of the April 20, 2006 edition and a witness designated by the Riverfront Times who could explain how the Riverfront Times received the photographic image files and how they were used to generate the photographs that appeared in print. Likewise, Plaintiff demonstrated that she had made an effort to obtain the information from every reasonable source and exhausted all possible alternatives. In support, Plaintiff noted how she had deposed all of Defendants' employees listed by Defendants in their Rule 26 disclosures as having information concerning Plaintiff's claims. Thus, Plaintiff demonstrated that the only access to the information sought was through the journalist, and such information was crucial to her claim. Thus, the undersigned found in the March 30, 2009 Order that the claim for which the information was to be used "'virtually rises or falls with the admission or exclusion of the proffered evidence.'" In re Application to Quash Subpoena to Nat'l Broad Co., 79 F.3d 346, 351 (2d Cir. 1996). Accordingly, the Court determined that Plaintiff could depose a witness designated by the Riverfront Times who could explain how the

---

[3]Defendants prior subpoenas sought material related to the editorial process, the Riverfront Times reporter's notes or the reporter's story file, story drafts, and deposition testimony about the reporter's reporting process.

Riverfront Times received the photographic image files and how they were used to generate the photographs that appeared in print and that the Riverfront Times produce documents regarding the receipt and publication of certain photographic image files.

On March 31, 2009, Plaintiff deposed the Riverfront Times corporate designee, John Carlson, a senior art director. Defendants' Motion and Memorandum to Re-Open Discovery and Defendants' Response to Plaintiff's Motion for Leave to Identify Expert Witness (Docket No. 73) (Exhibit A at 6, 8). In relevant part, Mr. Carlson testified that he instructed either/or both Kristen Hinman and Jennifer Silverberg to obtain better resolution photographs from Defendants for publication. (Id. at 34, 45-46). Mr. Carlson testified that the only two mediums in which the Riverfront Times could have obtained higher resolution photographs were as an email attachment or as a disk, but after searching the Riverfront Times' records, he could not find any evidence of a saved email or a disk. (Id. at 38-39, 62-63). Further, Mr. Carlson testified that he did not know whether there was a way to go back into the computer system and determine the first time the photographs were opened in the photo shop. (Id. at 44). Mr. Carlson identified John Maurer as the Riverfront Times employee dealing with information technology who might have knowledge regarding the storage and alterations to the photographic images at issue. (Id.).

In the Motion to Re-Open Discovery, Defendants seek to reopen discovery so that they have the opportunity to depose Ms. Hinman and Mr. Silverberg to ascertain how the Riverfront Times received the photographic image files, in what form the photographs were received, and who produced the photographs. In addition, Defendants seek to depose John Maurer for the limited purpose of determining "how [the photographic image files] were used to generate the photographs that appeared in print."

On May 13, 2009, counsel for the parties and non-party Riverfront Times appeared in open Court and presented arguments regarding Defendants' Motion to Re-Open Discovery. Indeed, Plaintiff's counsel agreed that the Court should re-open discovery so that Defendants can depose Ms. Hinman, Ms. Silverberg, and Mr. Maurer regarding the Riverfront Times' "receipt and use of the photographic image files in question." The Court reminds the parties that they are not permitted to seek any information relating to the Riverfront Times' editorial process relating to the content of the story with which the photo(s) in question appeared.

After reviewing the parties' pleadings and the record before the Court and considering the arguments presented at the May 13, 2009, hearing, the Court orders as follows:

**IT IS HEREBY ORDERED** that Defendants' Motion and Memorandum to Re-Open Discovery (Docket No. 73) is GRANTED for the reasons set forth in the instant memorandum. The depositions will be limited in scope as set forth herein.

**IT IS FURTHER ORDERED** that the June 15, 2009 trial date is vacated. After completion of the ordered depositions, the parties shall file a joint status report and mutually agreeable trial dates.

      /s/Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of May, 2009.