UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:08CV197 TIA |
| ) | |
| V. LEROY YOUNG, M.D., ) | |
| ROBERT CENTENO, M.D., ) | |
| C.B. BOSWELL, M.D., ) | |
| and AESTHETIC SURGERY ASSOCIATES, ) | |
| d/b/a BODY AESTHETIC PLASTIC ) | |
| SURGERY & SKIN CENTER, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. (Docket No. 69). Plaintiff filed a Memorandum in Opposition (Docket No. 85) and Defendants filed a Reply (Docket No. 93) thereto. All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Jane Doe filed the instant action against Defendants for improperly disseminating portions of her medical record related to her October 2004, plastic surgery to remove excessive skin due to substantial weight loss. (Plaintiff's Complaint, Docket No. 1, at ¶¶ 9-11, 15-16). Defendants V. Leroy Young, M.D., Robert Centeno, M.D., and C.B. Boswell, M.D. ("medical Defendants"), are physicians and surgeons engaged in the practice of their profession in St. Louis County and provided medical services to Plaintiff. (Id. at ¶¶ 1-3). Defendant Aesthetic Surgery Associates, Inc., d/b/a Body Aesthetic Plastic Surgery & Skin Care Center, Inc. ("Body Aesthetic") is a Missouri corporation and provided medical services to Plaintiff, and doctor Defendants served as employees,

officers, and /or members of Body Aesthetic. (Id. at ¶¶ 4-5). In particular, these materials include Plaintiff's "medical records" and "[p]hotos of Plaintiff [that] were part of the medical records of Plaintiff and were obtained by Defendants for the limited and sole purpose of rendering medical treatments." (Id. at ¶ 11). The photos allegedly "depict Plaintiff in full frontal and posterior naked poses ...." (Id. at ¶ 10). Plaintiff alleges that she apprised Defendants that she did not want her medical records and photos disseminated in any form or medium other than for purposes of medical treatment and that she never consented to the release of the photos. (Id. at ¶¶ 13, 15). Nonetheless, the photos appeared in an April 20, 2006, article published in the Riverfront Times regarding Defendants' plastic surgery medical practice. (Id. at ¶ 17). Plaintiff seeks monetary damages, including punitive damages, from Defendants for their alleged invasion of privacy and intrusion upon seclusion (Count I), invasion of privacy and unreasonable publicity (Count II), breach of fiduciary duty (Count III), wrongful commercial appropriation and exploitation of her image and medical information (Count IV), and negligent, careless and reckless conduct (Count V).

Defendants have filed a motion for partial summary judgment claiming that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law with respect to Counts I, II, IV, and V. Plaintiff has responded to Defendants' motion to which Defendants have replied.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of the motion, Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986), and the court must view all facts and

inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

The Court agrees with Defendants that Missouri law governs the instant action.[1] The Court notes that Plaintiff has not disputed that Missouri law applies to this case. The task of a federal court sitting in diversity is to "follow state law as announced by the highest court in the state." Bennett v. Hidden Valley Golf & Ski, Inc., 318 F.3d 868, 874 (8th Cir. 2003).

### The Undisputed Evidence before the Court on the Motion

Viewing all facts and drawing all reasonable inferences in the light most favorable of the

---

[1]Missouri examines the following factors in determining which state has the most significant relationship to the dispute at issue: (1) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile and residence of the parties; and (d) the place where the relationship between the parties is centered. The Court, being presented with no argument to the contrary by Plaintiff, is convinced by Defendants' arguments and find that the factors listed weigh in favor of applying Missouri law.

nonmoving party, A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 320 (S.D.N.Y. 1998) the Court sets forth the following facts:

Prior to the surgery in October 2004, Plaintiff attended water aerobics classes and shared with her friends and family members that she was being treated by Dr. Young and his medical group, Defendant Aesthetic Surgery Associates, Inc., d/b/a Body Aesthetic Plastic Surgery & Skin Care Center, Inc. ("Body Aesthetic"). (Pltf.'s Resp., Exh, 2: Young Depo. at 91-99; 109).

In October 2004, Defendants performed surgery on Plaintiff to remove excessive skin which developed as a result of substantial weight loss. (Plaintiff's Complaint, Docket No. 1, at ¶ 9). Prior to the surgery, Defendants took numerous "before" photographs and following the surgery, Defendants took numerous "after" photographs of Plaintiff and in some of the photographs depict Plaintiff in full frontal and posterior naked poses. (Id. at ¶ 10). In total, Defendants took approximately sixty-five photographs of Plaintiff before her surgery, during her surgery, and after her surgery. (Pltf.'s Resp., Exh.1: Young Depo. at 34 and Exh. 2). Some of the pictures show Plaintiff's face, head, hairstyle, hair, and chin as well as including her initials and written information regarding her medical history. (Pltf.'s Resp., Exh. 1: Young Depo. Exhs. 3, 4, and 5).

Plaintiff executed a "Photo Consent Form" of Aesthetic Surgery Associates dba Body Aesthetic Plastic Surgery & Skin Care Center dated October 6, 2004. (Deft.'s Mot. Summ. Judg., Exh. B). By executing the form, Plaintiff authorized a doctor "or a representative to take photographs, slides, or videos of me for the following procedure(s) for medical purposes to be used for my care, insurance predeterminations, medical presentations and/or articles: _____" (Id.). In the form, Plaintiff declined to authorize the use of the images for the following purposes:

For demonstration purposes including an **office photo album or seminar** for

>    prospective patients with no compensation.
>
>    On our **website** for prospective patients with no compensation.
>
>    In print **advertisements** with no compensation.
>
>    On **television** with no compensation.

(Id.) (emphasis in the original). Subsequently, Defendants included some of Plaintiff's photographs in a Power Point presentation for an Ethicon medical seminar entitled Body Contouring Master Class. (Deft.'s Mot. Summ. Judg., Exh. C: Young Depo. at 28, 35-36). There is a factual dispute regarding whether one of Defendants' employees checked Plaintiff's file to ensure she had signed the Photo Consent Form. (Deft.'s Mot. Summ. Judg., Exh. D: Watson Depo. at 7, 9; Pltf.'s Resp., Exh. 7: Hines Depo. at 15-16, Exh. 8: Bullar Depo. at 14-18, Exh. 9: Young Depo. at 63-65, and Exh. 11: Jundt Depo. at 6-7, 13-16). Stacy Hines, a medical assistant from 1999 through March 2006, testified that her understanding was that the patient's photographs were not to be used if the patient responded no to the four sections on the photo consent form. (Pltf.'s Resp., Exh. 7: Hines Depo. at 15, 24). Ms. Hines testified that Plaintiff checked no in every space on the photo consent form thus indicating to her that Defendants were not to use the photographs. (Pltf.'s Resp., Exh. 7: Hines Depo. at 15, 24). Likewise, Celeste Bullar, an employee of Defendants responsible for assisting patients in executing the photo consent form and with taking patients' photographs, testified that inasmuch as Plaintiff checked no to every question on the photo consent form, Plaintiff did not consent to Defendants using her photographs except for purposes of her medical treatment. (Pltf.'s Resp., Exh. 8: Bullar Depo. at 10-12, 14-18). Ms. Bullar further testified that if Defendants wanted to use a patient's photographs for purposes other than treating the patient, the office practice dictated calling the patient and asking the patient to verify her consent regarding using the photographs for

other purposes than medical treatment. (Pltf.'s Resp., Exh. 8: Bullar Depo. at 12-13). For instance, if Defendants wanted to use a patient's photographs in a particular article, then an employee would request that the patient sign another form specifying the patient's consent for the intended use. (Pltf.'s Resp., Exh. 7: Hines Depo. at 23-24). Anne Jundt, an administrative coordinator employed by Defendants from 2004-2006, also testified that the top half of the photo consent form authorized Defendant's to utilize a patient's photographs for the purpose of the patient's medical treatment and that a patient had to have specifically indicated yes on the bottom half of the form to authorize any other use of the photographs. (Pltf.'s Resp., Exh. 11: Jundt Depo. at 6-7, 13-16).

Jill Young, the office manager and patient coordinator, and a registered nurse and former attorney whose practice concentrated in medical malpractice defense, testified that the top half of the photo consent form advises a patient that her pictures will be used for the patient's medical care and treatment, medical presentations and/or articles, and that the bottom half of the form includes other optional uses of the photographs for which the patient must specifically provide her consent by responding affirmatively to the questions. (Pltf.'s Resp., Exh. 9: Young Depo. at 55-58, 59, 63-65). Ms. Hines also helped design the photo consent form utilized by Defendants. (Pltf.'s Resp., Exh. 7: Hines Depo. at 12-13, 36).

Sometime after the surgery on October 19, 2004, and before Plaintiff was admitted on December 26, 2004, Defendants contacted Plaintiff requesting use of her photographs in a chapter of a text, and Plaintiff refused to consent to the use of her photographs. (Pltf.'s Resp., Exh. 12: Young Depo. at 88-89). Marla Watson prepared slide presentations for Dr. Young to be used in presentations. (Pltf.'s Resp., Exh. 13: Watson Depo. at 13-14). Ms. Watson testified that Plaintiff had not consented to her photographs being used in a non-medical public forum by responding no to

the four questions on the photo consent form utilized by Body Aesthetic. (Id.). Further, Ms. Watson removed Plaintiff's photographs from the presentation she had prepared when she became aware of Plaintiff suing Dr. Young for medical malpractice. (Id. at 45).

Ms. Young is the designated Health Insurance Portability and Accountability Act ("HIPAA") privacy officer for Body Aesthetic. (Pltf.'s Resp., Exh. 9: Young Depo. at 45). The employee manual setting forth Body Aesthetic's privacy policies was drafted prior to the implementation of HIPAA. (Id. at 14-15, 23-25). The employee manual was revised approximately six months prior to Ms. Young's deposition on November 19, 2008. (Id. at 16-19).

In approximately February 2006, Kristen Hinman, a reporter from the Riverfront Times ("RFT") approached Defendant Young about writing an article for publication in the RFT. (Deft.'s Mot. Summ. Judg., Exh. C: Young Depo. at 19). Dr. Young testified that the reporter approached him about writing an article about bariatric weight loss patients and body contouring surgery but in fact other unrelated topics were included in the article including procedures performed by Defendants to restructure sexual organs, transform sexual organs, and to enhance breasts and buttocks as well as quotes from the Defendants. (Deft.'s Mot. Summ. Judg., Exh. C: Young Depo. at 19; Exh. G). Ms. Hinman interviewed the three Defendant doctors.

During the early stages of writing her article and after Defendants had explained the medical procedures, Ms. Hinman requested additional information from Defendants regarding the procedures for background purposes. (Deft.'s Mot. Summ. Judg., Exh. C: Young Depo at 25-26). Defendants provided Ms. Hinman with an electronic presentation on a compact disc that they used for medical presentations to other surgeons and patients. (Pltf.'s Resp., Exh. 3: Boswell Depo. at 42; Exh. 4: Centeno Depo at 51). Additional photographs of Plaintiff depicting portions of her head, hair, and

chin as well as including her initials and written information regarding her medical history were contained on the Power Point disc. (Pltf.'s Resp., Exh. 1: Young Depo. Exhs. 3, 4, and 5). Dr. Boswell recalled that Defendant doctors told Ms. Hinman she could use the information on the disc for background information but he could not specifically recall whether they told Ms. Hinman she could not use any of the photographs on the disc. (Pltf.'s Resp., Exh. 3: Boswell Depo. at 42-43). Ms. Young never looked at the disc provided to Ms. Hinman. (Pltf.'s Resp., Exh. 9: Young Depo. at 50). Defendants Boswell and Centeno testified that they did not believe they would have the opportunity to review the article before publication and none of the Defendants obtained any oral or written agreement regarding the publication of the article, the use of the disc provided to Ms. Hinman, or the publication of any of the information on the disc including the photographs. (Pltf.'s Resp., Exh. 3: Boswell Depo. at 42-44; Exh. 4:Centeno Depo. at 93; Exh. 5: Young Depo. at 28).

On April 20, 2006, the RFT published an article entitled *Sultan of Skin* including photographs of Plaintiff, without her permission. (Deft.'s Mot. Summ. Judg., Exh. G: *Sultan of Skin*; Pltf.'s Resp., Exh, 1: Young Depo. at 93). The article discusses the doctors' practice areas and includes extensive quotes by Defendant doctors and several pictures of the doctors. (Id. at Exh. G: *Sultan of Skin*). Two of the photographs in the article showed Plaintiff, one before surgery and one from after surgery, from mid-calf to neck down without showing her head and face. (Deft.'s Mot. Summ. Judg., Exh. G: RFT Article). Plaintiff's photographs are pictured in the section of the article discussing massive weight-loss patients and how their extra skin after losing hundreds of pounds does not contract. (Id.). The article appeared in the newspaper's April 20, 2006 edition and could also be viewed on the Internet. Plaintiff's name does not appear in the published RFT article. (Id.). Although Plaintiff's photographs in the article do not identify Plaintiff by name, the article includes the names of the

doctors, their health group, and discusses the types of surgery performed by the doctors. (Deft.'s Mot. Summ. Judg., Exh. H: Young Depo. at 90-91).

Defendant Centeno testified that after discovering the article on the RFT website, he contacted Ms. Hinman regarding the publication of Plaintiff's photographs and asked her to have the photographs removed from the article inasmuch as Defendants had never given permission to the RFT to publish the photographs. (Deft.'s Mot. Summ. Judg., Exh F: Centeno Depo. at 79). Ms. Hinman told Defendant Centeno that the photographs could be removed from the website but the photographs could not be removed from the paper version inasmuch as the paper had already gone to press. (Id. at 79-80). The RFT removed the photographs from the website article within days of the article first appearing on the website. (Pltf.'s Resp., Exh. 6: Carlson Depo. at 67).

John Carlson, the art director at the RFT, testified that the photos of Plaintiff appearing in the article were reproduced from specific high definition photographs which were obtained from Defendants for the purpose of publication, in addition to the Power Point disc. (Pltf.'s Resp., Exh. 6: Carlson Depo. at 12-15, 67-68). Indeed, Ms. Young, Defendant's office manager and patient coordinator, acknowledged that an employee of Body Aesthetic physically provided the disc containing the high resolution photographs to the RFT. (Pltf.'s Resp., Exh. 1: Young Depo. at 93; Exh. 9: Young Depo. at 5). Mr. Carlson was the person at the RFT who incorporated the electronic file for the photographs to appear in the article, and he testified that he did not use the Power Point photographs for the article but he utilized the higher resolution photographs produced by Defendants at a later date. (Pltf.'s Resp., Exh. 6: Carlson Depo. at 12-15, 67-68, Exh. 4). Mr. Carlson explained that the high resolution images, and not the images contained on the Power Point disc, were utilized to produce the images contained on page 21 of the RFT article dated April 20, 2006. (Id.). Steve

Parisi, Plaintiff's expert, testified that the high resolution images could not have been created from the Power Point disc. (Pltf.'s Exh. 10: Parisi Depo. at 83-84, 101-02).

At the time the article appeared in the RFT, Plaintiff was living in Cartersville, Georgia. (Deft.'s Mot. Summ. Judg., Exh. H: Young Depo. at 85). Plaintiff first learned of the RFT article in May 2007, approximately one year after its publication. (Id.). Plaintiff's lawyer representing her in a medical malpractice lawsuit against Defendants apprised Plaintiff of the publication of the RFT article. (Id. at 86-89). Defendants never apprised Plaintiff of the RFT newspaper and Internet articles containing her photographs. (Pltf.'s Resp., Exh. 3 Boswell Depo. at 66).

Ms. Hines testified that she read the article on the internet after one of her coworkers contacted her and apprised Ms. Hines that there was an article regarding Plaintiff. (Pltf.'s Resp., Exh. 7: Hines Depo. at 27-28). When she read the article, Ms. Hines viewed the two photographs of Plaintiff. (Id.). Ms. Bullar testified that she did not remember if she recognized Plaintiff as the person pictured in the two photographs in the RFT article at the time she first read the article, but an employee of Defendants disclosed Plaintiff's identity. (Id. at 18-19). Ms. Young testified in both of her depositions that she never read the RFT article containing Plaintiff's photographs and thus she would not specifically know if Plaintiff's photographs appeared in the article. (Pltf.'s Resp, Exh. 1: Young Depo. at 45-46; Exh. 9: Young Depo. at 35-45). Ms. Young testified that she understood the article discussed body contouring after weight loss. (Pltf.'s Resp., Exh, 9: Young Depo. at 38-39). After the publication of the article, Ms. Young as the privacy officer of the corporation had a conversation with the doctors to determine how Plaintiff's photographs had been released to the RFT. (Id. at 45-46). Ms. Young agreed that Plaintiff's photographs should not have been published in the RFT article. (Id.). It is undisputed that Plaintiff's photographs could only have come from

Defendants' office. (Pltf.'s Resp., Exh. 1: Young Depo. at 93).

## Discussion

A tort for invasion of privacy was first recognized in an 1890 law review article written by Samuel D. Warren and Louis D. Brandeis, his law partner. Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890). In the article addressing the yellow journalism of the era after newspapers published stories about the private affairs of the social elite, they suggested that people have a "right to be let alone" in their private affairs. Id. at 195 (*citing* Cooley on Torts, 2d ed., p. 29). Thereafter, the American Law Institute recognized the need for such a cause of action: A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other. 4 Restatement of Torts §867 (1939). Some of the examples offered in the comments to § 867 illustrate the initial scope of this action:

> 2. A, as an advertisement for baby food, publishes a picture of B, a mother nursing her child, without B's consent. B has a cause of action against A.
>
> 3. From a skylight in an operating room in a hospital, A takes moving pictures of an abdominal operation performed upon B, a woman. A shows these pictures publicly. B has a cause of action against A.

4 Restatement of Torts § 867, illus. at 461. In 1960, Prosser suggested that the single tort for invasion of privacy was actually four distinct torts described as follows:

1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

Prosser, *Privacy*, 48 Calif.L.Rev. 382, 389 (1960). In the second restatement, the American Law Institute adopted Prosser's classification in section 652A. Restatement (Second) of Torts §§ 652A-652E. The Restatement divides the privacy tort into four branches: unreasonable intrusion upon the seclusion of another (§ 652B); appropriation of the other's name or likeness (§ 652C); unreasonable publicity given to the other's private life's (§ 652D); and 'publicity which reasonably places the other in a false light before the public' (§ 652E). Although similar, each tort has its own elements of proof, and each protects a slightly different privacy interest. Sullivan v. Pulitzer Broadcasting Co., 709 S.W.2d 475, 477 (Mo. banc 1986). Under Missouri law, the general tort of invasion of privacy describes four distinct torts under Missouri law: (1) unreasonable intrusion upon the seclusion of another; or (2) appropriation of the other's name or likeness; or (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. Ruzicka Elec. and Sons, Inc. v. International Bros. of Elec. Workers, Local 1, AFL-CIO, 427 F.3d 511, 524 (8th Cir. 2005) (applying Missouri law).

In Rawls v. Conde Nast Publications, Inc. 446 F.2d 313, 318 (5th Cir. 1971), the court denied recovery for invasion of privacy where a photograph of the interior of plaintiff's home was published without consent opining: 'In our case the absence of public identification of the plaintiff's home or possessions (as already indicated, all possibility of identification was carefully obliterated before publication) precludes recovery and should have mandated the granting of defendant's motions by the trial judge.... Very simply put, the plaintiff may not recover for invasion of privacy when, as here, her privacy remains inviolate.' Citing as support Hanson and Prosser, the court noted that "[t]ext

writers on the subject generally agree with this view."[2] Id. at 318.

With respect to the invasion of privacy counts, Defendants move for summary judgment contending that Plaintiff cannot be identified from the published photographs and thus her privacy remains intact. Defendants argue that the photographs do not identify Plaintiff by name nor do they contain any identifiable features of Plaintiff and allegedly no individual has recognized Plaintiff from the publication of the photographs. Plaintiff opposes the motion by noting how Defendants address all three invasion of privacy counts without any separate discussion of the elements or standard of proof for each individual tort but instead, contend that inasmuch as Plaintiff is not identified in the article and the photographs, she cannot state a claim for invasion of privacy as a matter of law.

### A. Intrusion Upon Seclusion

Defendants assert that summary judgment against Plaintiff is proper because Plaintiff is unable to establish that she has been identified from the RFT article.

Under Missouri law, three elements encompass the claim for unreasonable intrusion upon the

---

[2] Arthur B. Hanson, Libel and Related Torts, p 204 (1969) opined as follows:

> As in defamation, there must be some reasonable grounds for concluding that it is the plaintiff whose privacy had been invaded. Thus, recovery has been denied for the publication of photographs of only plaintiff's home, or of other possessions, with no further reference to the plaintiff. However, it is not necessary to name or picture the plaintiff in order to make actionable reference to him, if sufficient identification is otherwise made.

Likewise, Prosser in the Law of Torts, Section 112) opined:

> On the other hand there is no liability for the publication of a picture of his hand, leg or foot, or his house, his automobile or his dog, with nothing to indicate whose they are.

Prosser, Law of Torts, § 112, p. 841.

seclusion of another: (1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means. Corcoran v. Southwestern Bell Telephone Co., 572 S.W.2d 212, 215 (Mo. Ct. App. 1978) (public disclosure of private facts and intrusion upon seclusion). In Corcoran, the defendant obtained her former in-laws' telephone bill by deception, opened the sealed, first-class mail addressed to plaintiffs, and read the contents of the mail without authorization to learn the whereabouts of her former husband. The court found that the evidence was sufficient to establish that plaintiffs had made a submissible case for intrusion upon seclusion because defendant obtained private information through "methods objectionable to the reasonable man." Id. at 215.

On the information before the Court, it cannot be said that Defendants have established their right to judgment with such clarity as to leave room for no controversy and that Plaintiff is not entitled to prevail under any discernable circumstances. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). A genuine issue of material fact exists regarding whether Plaintiff can be and has been identified in the photographs published in the RFT article. Therefore, Defendants' Motion for Partial Summary Judgment will be denied.

### B. Public Disclosure of Private Facts and Unreasonable Publicity

Defendants contend that even if Plaintiff has produced evidence of identification, they cannot be held liable inasmuch as Plaintiff has failed to establish the publication element of the unreasonable publication of private matters.

Under Missouri law, the elements of the tort of unreasonable publicity given to another's private life are: (1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters

in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities. Y.G. v. Jewish Hosp. of St. Louis, 795 S.W.2d 488, 498-99 (Mo. Ct. App. 1990). Under the first element, publication means "communication to the public in general or to a large number of persons, as distinguished from one individual or a few." St. Anthony's Medical Ctr. v. H.S.H., 974 S.W.2d 606, 610 (Mo. Ct. App. 1998) (quoting Biederman's of Springfield, Inc. v. Wright, 322 S.W.2d 892, 898 (Mo. 1959). "The critical aspect of the publication requirement is **public disclosure** - communications that are available to the general public, communications that have a likelihood of becoming public knowledge." Childs v. Williams, 825 S.W.2d 4, 9 (Mo. Ct. App. 1992). Defendants contend that like the defendant in St. Anthony's, they published Plaintiff's photographs to one individual, the RFT reporter, not to the public at large. The court in St. Anthony's found the publication by the hospital of defendant's medical records to his wife's attorney in their divorce proceeding did not constitute publication as required in an action for public disclosure of private facts inasmuch as the hospital published defendant's medical records to one individual, not to the public at large. St. Anthony's, 974 S.W.2d at 610-11.

More analogous is Tureen v. Equifax, Inc., 571 F.2d 411 (8th Cir. 1978) in which the court interpreted and applied Missouri law on the publication issue and determined that plaintiff failed to show disclosure of private facts to the general public when there was no dissemination of the report produced by defendant, an independent consumer reporting firm, to its client, an insurance company, outside the insurance company's claims office. The court concluded by finding "there must be evidence of publicity in the sense of a disclosure to the general public or likely to reach the general public, as opposed to 'publication' required in a defamation action, in order for plaintiff to make a submissible case of invasion of privacy by public disclosure of private facts." Tureen, 571 F.2d at

419; see also Biederman's of Springfield, Inc. v. Wright, 322 S.W.2d 892, 898 (Mo. 1959) (the Missouri Supreme Court found that the publications at issue were made orally in a public restaurant, "an environment conducive to the dissemination of the information to the public at large.").

In the instant case, Defendants obtained Plaintiff's photographs in the ordinary course of its business and for purposes of medical treatment. But, unlike the cases cited, Defendants should have been on notice that producing the disc containing Plaintiff's photographs to a reporter without an agreement governing the use of the photographs could and in fact did lead to communication to the general public and caused the photographs to be publicly disclosed to the general public. Certainly indiscriminate publication of private information unrelated to any legitimate public purpose should give rise to an action for invasion of privacy. The undisputed evidence establishes that Defendants provided Plaintiff's photographs to the RFT reporter without Plaintiff's consent or any agreement governing the use of the photographs. Accordingly, on the record before the Court, Plaintiff has not failed to establish the publication element of the unreasonable publication of private matters.

### C. Wrongful Commercial Appropriation and Exploitation of Plaintiff's Image

Defendants assert that summary judgment against Plaintiff is proper in this case because Plaintiff is unable to establish that she has been identified from the RFT article.

In Munden v. Harris, 153 Mo.App. 652, 134 S.W. 1076 (1911), a jeweler published a picture of a five-year-old, without obtaining his consent, for advertising the business. Id. at 1077. The child's parents sued the advertiser for invasion of privacy for publishing his picture in an advertisement without his consent. Id. The Court of Appeals held that "one has an exclusive right to his picture, on the score of its being a property of right of material profit." Id. at 1079. The court

- 16 -

recognized that the right of privacy is not unlimited and may be vitiated by consent or limited by "social conditions" such as business relations. Id. The court then allowed the plaintiff to go forward to show both damages to his reputation and feelings, as well as for any value that the defendant derived from the unauthorized use of the child's identity in advertising its goods. Id. at 1079, 1081. In relevant part, the court opined as follows:

> The right of privacy is spoken of as a new right, when in fact it is an old right with a new name. Life, liberty and the pursuit of happiness are rights of all [persons] ... The right to life includes the right to enjoy life. Everyone has the privilege of following that mode of life, if it will not interfere with others, which will bring to him the most contentment and happiness. He may adopt that of privacy, or if he likes, of entire seclusion.... If this right is invaded, he may have his remedy, either by restraint in equity or damages in an action at law.

Id. at 1078; see also Haith v. Model Cities Health Corp. of Kansas City, 704 S.W.2d 684, 687-88 (Mo. Ct. App. 1986) (the Missouri Court of Appeals determined that a showing of the use of a plaintiff's name without consent on an application for a federal grant was sufficient to submit the case to a jury inasmuch as the plaintiff's name was taken in pursuit of economic benefit for the defendant without plaintiff's permission).

On the information before the Court, it cannot be said that Defendants have established their right to judgment with such clarity as to leave room for no controversy and that Plaintiff is not entitled to prevail under any discernable circumstances. Vette Co. v. Atena Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). A genuine issue of material fact exists regarding whether Plaintiff can be and has been identified in the photographs published in the RFT article. Therefore, Defendants' Motion for Partial Summary Judgment will be denied.

### D. Negligence

Defendants contend that Plaintiffs have failed to make a submissible case of negligence

because of the absence of medical testimony.

In relevant part, Plaintiff alleged that "[t]he conduct of Defendants in releasing, discussing and distributing Plaintiff's medical records, medical information and Photos failed to meet the standard of care required of medical practitioners under the same or similar circumstances and was negligent, careless and reckless." (Plaintiff's Complaint, Docket No. 1, at ¶ 55).

As determined in Robbins v. Jewish Hosp. of St. Louis, 663 S.W.2d 341, 346 (Mo. Ct. App. 1983), "[n]ot every case seeking to recover damages for injuries sustained while undergoing medical treatment ... requires expert medical testimony to prove negligence." The court explained that expert testimony is required when the conduct at issue involves highly specialized skills or knowledge peculiar to a particular profession, expert testimony is essential to guide lay jurors in determining whether such conduct departed from the accepted standard of care in that profession. Id. In comparison,

> there [is] [no] peculiar need for expert testimony on any issue the resolution of which would not extend the jury beyond the range of ordinary lay knowledge and experience ... there must be, in the nature of things, many instances where facts alone prove the negligence, and where it is unnecessary to have the opinions of persons skillful in the particular science to show unskillful and negligent treatment.

Id. (quoting Daugherty v. North Kansas City Memorial Hosp., 570 S.W. 2d 795, 797 (Mo. Ct. App. 1978)).

Applying the foregoing to the instant case, the undersigned finds that expert testimony would not be necessary to establish Defendant's negligence inasmuch as the release of the disc containing Plaintiff's photographs to the RFT did not involve any medical diagnosis, treatment, or procedure peculiar to the medical profession.

### E. **Punitive Damages**

"If a physician discloses any information, without first obtaining the patient's waiver, then the patient may maintain an action for damages in tort against the physician." Fierstein v. DePaul Health Center, 24 S.W.3d 220, 224 (Mo. Ct. App. 2000) (quoting Fierstein v. DePaul Health Center, 949 S.W.2d 90, 92 (Mo. Ct. App. 1997) ("Fierstein I"). Punitive damages are appropriate where the defendant's conduct is outrageous because of defendant's evil motive or reckless indifference to the rights of others. Id. at 225. Inasmuch as there are disputed material facts regarding the facts and circumstances of Defendants' production of the Power Point disc containing Plaintiff's photographs and the production of high-resolution photographs without Plaintiff's consent to the RFT for use in the article without any oral or written agreement governing the use of the photographs, the Court will deny Defendants' Motion as directed to punitive damages.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (Docket No. 69) is Denied.


Dated this  30th  day of October, 2009.


                                            /s/Terry I. Adelman
                                  UNITED STATES MAGISTRATE JUDGE