UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:08CV197 TIA |
| | ) |
| V. LEROY YOUNG, M.D., | ) |
| ROBERT CENTENO, M.D., | ) |
| C.B. BOSWELL, M.D., and | ) |
| AESTHETIC SURGERY ASSOCIATES, | ) |
| d/b/a BODY ASTHETIC PLASTIC SURGERY | ) |
| & SKIN CARE CENTER, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the Court on Plaintiff's Motion for New Trial (Docket No. 153). Defendants have filed opposition thereto. All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

**Facts and Background**

Plaintiff Jane Doe filed the instant action against Defendants for improperly disseminating portions of her medical record related to her October 2004, plastic surgery to remove excessive skin due to substantial weight loss. ( Plaintiff's Complaint, Docket No. 1, at ¶¶ 9-11, 15-16). Defendants V. Leroy Young, M.D., Robert Centeno, M.D., and C.B. Boswell, M.D. ("medical Defendants"), are physicians and surgeons engaged in the practice of their profession in St. Louis County and provided medical services to Plaintiff. (Id. at ¶¶ 1-3). Defendant Aesthetic Surgery Associates, Inc., d/b/a Body Aesthetic Plastic Surgery & Skin Care Center, Inc. ("Body Aesthetic") is a Missouri

corporation and provided medical services to Plaintiff, and doctor Defendants served as employees, officers, and /or members of Body Aesthetic. (Id. at ¶¶ 4-5). Plaintiff sought monetary damages, including punitive damages, from Defendants for their alleged invasion of privacy and intrusion upon seclusion (Count I), invasion of privacy and unreasonable publicity (Count II), breach of fiduciary duty (Count III), wrongful commercial appropriation and exploitation of her image and medical information (Count IV), and negligent, careless and reckless conduct (Count V). This matter was tried before a jury from November 9, 2009 through November 16, 2009. The jury returned a verdict in favor of Plaintiff in the amount of $100,000.00 on her claim for compensatory damages for invasion of privacy and returned verdicts in favor of Defendants on the remaining claims.

## Standard for Motion for New Trial

Plaintiff's motion was filed pursuant to Rule 59 of the Federal Rules of Civil Procedure and requests the Court to set aside the verdict of the jury returned on November 16, 2009, and to grant a new trial on fourteen grounds.

Rule 59(a) provides in pertinent part as follows: "The court, may, on motion, grant a new trial on all or some of the issues - and to any party ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Eighth Circuit Court of Appeals has explained evaluating a motion for a new trial pursuant to Rule 59(a) as follows: "[t]he key question is whether a new trial should [be] granted to avoid a misscarriage of justice." McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994). A new trial is appropriate when the trial, through a verdict against the weight of the evidence or legal errors at trial, resulted in a miscarriage of justice. White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). However, legal errors must adversely and substantially impact the moving party's substantial rights

to warrant relief. Rule 61 of the Federal Rules of Civil Procedure.

"In determining whether or not to grant a new trial, a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." King v. Davis, 980 F.2d 1236, 1237 (8th Cir. 1992). "[T]he 'trial judge may not usurp the function of a jury ... [which] weighs the evidence and credibility of witnesses.'" White, 961 F.2d at 780 (quoting McGee v. South Pemiscot Sch. Dist., 712 F.2d 339, 344 (8th Cir. 1983)). "Instead, a district judge must carefully weigh and balance the evidence and articulate reasons supporting the judge's view that a miscarriage of justice has occurred.'" King, 980 F.2d at 1237. Although the Court has discretion to set aside the jury verdict and grant a new trial, it "may not do so merely because it believes that the evidence permitted different inferences or that another result would be more reasonable." Blake v. J.C. Penney Co., 894 F.2d 274, 281 (8th Cir. 1990). Instead, "the [C]ourt must conclude that the jury reached a seriously erroneous result and must state its reasons for this belief." Id.

"The authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). On the issue of damages, the propriety of the amount of a verdict "is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of witnesses and which knows the community and its standards...." Wilmington v. J.I. Case Co., 793 F.2d 90, 922 (8th Cir. 1986) (quoting Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447-48 (8th Cir. 1961)). "[T]he assessment of damages is especially within the jury's sound discretion when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms." Stafford v. Neurological Med., Inc., 811 F.2d 470, 475 (8th Cir. 1987); see also

Convergys Customer Mgmt. Group, Inc., 491 F.3d 790, 798 (8th Cir. 2007) (same).

A movant may not use a motion for new trial "to introduce into evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to the entry of judgment." Parton v. White, 203 F.3d 552 (8th Cir. 2000) (citation omitted); Capital Indemnity Corp. v. Russellville Steel Co., Inc., 367 F.3d 831, 834 (8th Cir. 2004). The movant must "specifically identify the alleged erroneous ruling and the improperly excluded evidence." Moses.com Sec. Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1059 (8th Cir. 2005) (citations and internal quotations omitted). The Court's ultimate inquiry is whether the first trial resulted in a miscarriage of justice. White, 961 F.2d at 780. The burden of demonstrating that error warrants a new trial rests with the moving party. Comerio v. Beatrice Foods Co., 616 F. Supp. 1423, 1428 (E.D. Mo. 1985).

## Discussion

### A. Exclusion of the Testimony of Kristen Hinman

Plaintiff argues that the exclusion of Kristen Hinman's testimony at trial regarding whether she agreed to a pre-publication review of the article by Defendants prior to publication and whether she had Defendants' permission to the photographs contained on the Power Point Disc provided to Ms. Hinman caused her prejudice.

On August 26, 2008, Defendants first served a subpoena[1] on non-party Riverfront Times[2] requesting the Riverfront Times to produce the following documents:

> 1. A full and complete copy of all documents and/or materials in your possession, custody or control, used to prepare your article titled "Sultan of Skin: Flesh Insight from an Esteem St. Louis Plastic Surgeon," published in the April 20, 2006 issue of the Riverfront Times, ... including but not limited to: all contents of the file, all correspondence concerning the article or preparation thereof, emails, notes, memoranda, drafts, edits, tapes, recordings, digital copies, transcripts, journals, electronic diaries, and any other relevant material.

(Riverfront Times' Objections and Motion to Quash Subpoena, Docket No. 21, Exh. A at Attachment A).

Riverfront Times filed its Objections and Motion to Quash Subpoena and Notice of Deposition (Docket No. 21) on August 28, 2008, seeking to quash the subpoena and notice of deposition. Riverfront Times argued that the subpoena was overbroad and sought materials that were not original to the Riverfront Times. In relevant part, the Riverfront Times contended that as a non-party to the instant litigation the Riverfront Times should not be required to devote substantial time and resources in responding to the subpoena and producing materials to Defendants that were originally provided by the same Defendants. Further, the Riverfront Times argued the subpoena sought the reporter's notes and work product. The Riverfront Times argued that the qualified

---

[1]When Defendants served their first subpoena, the case was in the early stages of discovery with the discovery deadline of January 15, 2009. The Riverfront Times filed a Motion to Quash and Notice of Deposition (Docket No. 21) on August 28, 2008. Before ruling on the motion to quash, the Court entered an Amended Case Management Order on October 17, 2008, extending the discovery deadline to March 16, 2009, as requested by the parties in the Joint Proposed Amended Scheduling Order (Docket No. 25).

[2]A review of the allegations set forth in Plaintiff's Complaint shows that Defendants' alleged improper dissemination of the photographs contained in Plaintiff's medical records is the heart of the case, not the subsequent publication of the photographs in the Riverfront Times. ( Plaintiff's Complaint, Docket No. 1, at ¶¶ 9-11, 15-16).

journalist privilege prohibited the use of journalists as witnesses and as sources for documentary evidence unless the information sought is critical to the maintenance or heart of the claim, is highly material and relevant, and is unobtainable from other sources. Continental Cablevision, Inc. v. Storer Broadcasting Co., 583 F. Supp. 427, 433-36 (E.D. Mo. 1984). In applying the privilege, the Court must balance the competing interests involved by considering the relevance and materiality of the information, whether the party seeking the information has made reasonable efforts to obtain the information from an independent source, and whether there is truly a need for the information.

In response to the Riverfront Times' Motion to Quash, Defendants argued in relevant part as follows:

> In this case, the qualified reporter's privilege is practically insignificant, and the Defendants' need for the information is great. Non-confidential material is being sought that is highly relevant as to how the Riverfront Times obtained and published the photographs. Defendants need any information in the file, including correspondence, that would relate to any permission Defendants allegedly gave to the Riverfront Times to release the photographs. Defendants also need any information showing whether the Riverfront Times had the Defendants' permission to release the photographs. Further, Defendants need information concerning whether the Riverfront Times promised to let Defendants review the article prior to publishing. Moreover, Defendants need the file to see what form the photographs are in (i.e. disk, electronic, separate photographs, etc.).

\*\*\*

> ... Additionally, the information sought is crucial to determine whether the Defendants gave the Riverfront Times permission to release the photographs. Moreover, information concerning whether the Riverfront Times promised to let the Defendants review the article prior to publishing is crucial to the case.

(Defendants' Memorandum in Opposition to Objections and Motion to Quash Subpoena and Notice of Deposition Directed to Riverfront Times, Docket No. 22 at 3-4). In the reply brief, the Riverfront Times argued it had permission to publish the photos and/or whether the reported agreed to pre-

publication review of the article was irrelevant to the case inasmuch as Defendants' "alleged improper dissemination of the photographs" was the "heart of the case" at issue, not the actions of the Riverfront Times or the publication of the photographs. (Riverfront Times Reply Supporting Its Motion to Quash Subpoena and Deposition Notice, Docket No. 23 at 5-6). Further, the Riverfront Times that the journalist privilege prevented Defendants from seeking information from the Riverfront Times regarding the factual issues.

In the Order of October 28, 2008, the Court granted the motion to quash finding at that time other sources of information had not been exhausted. Thereafter, on November 5, 2008, the Riverfront Times filed Objections and Motion to Quash Subpoena and Notice of Deposition Directed to Reporter Kristen Hinman (Docket No. 32), noting that other than the name of the deponent and the date/time set for compliance, the subpoena and notice of deposition was substantially identical to the earlier subpoena served on the reporter's employer, the Riverfront Times, and quashed by the Court on October 28, 2008. On November 6, 2008, the undersigned entered a docket text Order granting the Objections and Motion to Quash Subpoena and Notice of Deposition Directed to Reporter Kristen Hinman and Amended Motion for the reasons set forth in the October 28, 2008 Order.

On March 18, 2009, Plaintiff's counsel issued a Subpoena directed to the Riverfront Times, requesting the Riverfront Times make available for deposition a corporate designee and produce and permit inspection and copying the image files used for the publication of the photographs. (Exhibit A attached to Objections and Motion to Quash Subpoena and Anticipated Notice of Deposition Directed to Riverfront Times (Docket No. 60)). In relevant part, the Riverfront Times contended that information should be available from Defendants regarding what information and/or materials

Defendants provided to the Riverfront Times, and Plaintiff should be required to fully seek such information from Defendants and any other potential sources before seeking such information from the Riverfront Times. Moreover, with respect to the heart of the matter prong, the Riverfront Times requested the Court to strictly hold Plaintiff to the strictures of the test. Nonetheless, if the subpoena was upheld, the Riverfront Times requested that the deposition be confined solely to the subject of the Riverfront Times receipt and publication of certain photographic image files and specifically exclude information relating to the Riverfront Times' editorial process relating to the content of the story with which the photo(s) appeared.

The undersigned determined that the qualified privilege should not shield the Riverfront Times from the subpoena by Plaintiff. Unlike the earlier subpoenas issued by Defendants near the outset of discovery requesting testimony and documents regarding the Riverfront Times' news gathering process,[3] Plaintiff issued the subpoena near the completion of discovery seeking testimony and documents regarding the Riverfront Times' receipt and publication of certain photographic image files. Indeed, in Plaintiff's Response to the Objections of Riverfront Times to Plaintiff's Subpoena, Plaintiff fully agreed with the Riverfront Times's proposal of limiting the deposition solely to the Riverfront Times' "receipt and use of the photographic image files in question." Likewise, Plaintiff demonstrated that she had made an effort to obtain the information from every reasonable source and exhausted all possible alternatives. Thus, the undersigned determined that Plaintiff demonstrated that the only access to the information sought was through the journalist, and such information was crucial to her claim. Thus, the undersigned found in the March 30, 2009 Order that the claim for which the

---

[3]Defendants prior subpoenas sought material related to the editorial process, the Riverfront Times reporter's notes or the reporter's story file, story drafts, and deposition testimony about the reporter's reporting process.

information was to be used "'virtually rises or falls with the admission or exclusion of the proffered evidence.'" In re Application to Quash Subpoena to Nat'l Broad Co., 79 F.3d 346, 351 (2d Cir. 1996). Accordingly, the Court determined that Plaintiff could depose a witness designated by the Riverfront Times who could explain how the Riverfront Times received the photographic image files and how they were used to generate the photographs that appeared in print and that the Riverfront Times produce documents regarding the receipt and publication of certain photographic image files.

On March 31, 2009, Plaintiff deposed the Riverfront Times corporate designee, John Carlson, a senior art director. Defendants' Motion and Memorandum to Re-Open Discovery and Defendants' Response to Plaintiff's Motion for Leave to Identify Expert Witness (Docket No. 73) (Exhibit A at 6, 8). In relevant part, Mr. Carlson testified that he instructed either/or both Kristen Hinman and Jennifer Silverberg to obtain better resolution photographs from Defendants for publication. (Id. at 34, 45-46). Mr. Carlson testified that the only two mediums in which the Riverfront Times could have obtained higher resolution photographs were as an email attachment or as a disk, but after searching the Riverfront Times' records, he could not find any evidence of a saved email or a disk. (Id. at 38-39, 62-63). Further, Mr. Carlson testified that he did not know whether there was a way to go back into the computer system and determine the first time the photographs were opened in the photo shop. (Id. at 44). Mr. Carlson identified John Maurer as the Riverfront Times employee dealing with information technology who might have knowledge regarding the storage and alterations to the photographic images at issue. (Id.).

In the Motion to Re-Open Discovery, Defendants sought to reopen discovery so that they would have the opportunity to depose Ms. Hinman and Mr. Silverberg to ascertain how the Riverfront Times received the photographic image files, in what form the photographs were received,

and who produced the photographs. In relevant part, Defendants requested to re-open discovery for the very limited purpose of deposing Kristen Hinman and Jennifer Silverberg to discover "who can explain how the Riverfront Times received the photographic image files" and "how the Riverfront Times received the photographic image files." (Defendants' Motion and Memo. to Re-Open Discovery (Docket No. 73 at 4-6)). Indeed, Defendants noted how "Plaintiff has now listed Ms. Kristen Hinman as a potential witness at trial in her Third Supplemental Answers to Defendants Interrogatories. If Plaintiff is planning on calling Kirsten[*sic*] Hinman at trial, Defendants should be afforded the opportunity to depose Ms. Hinman prior thereto." (Id at 5). In addition, Defendants sought to depose John Maurer for the limited purpose of determining "how [the photographic image files] were used to generate the photographs that appeared in print." (Id. at 6).

On May 13, 2009, counsel for the parties and non-party Riverfront Times appeared in open Court and presented arguments regarding Defendants' Motion to Re-Open Discovery. Plaintiff's counsel agreed that the Court should re-open discovery so that Defendants can depose Ms. Hinman, Ms. Silverberg, and Mr. Maurer regarding the Riverfront Times' "receipt and use of the photographic image files in question." The Court reminded "the parties that they are not permitted to seek any information relating to the Riverfront Times' editorial process relating to the content of the story with which the photo(s) in question appeared." After reviewing the parties' pleadings and the record before the Court, the undersigned entered an Order allowing depositions for the limited purpose of determining "how [the photographic image files] were used to generate the photographs that appeared in print", in other words, how the Riverfront Times received the photographic image files, in what form the photographs were received, and who produced the photographs.

The record shows that the issue whether the Court's prior Orders permitted either party to

- 10 -

inquire into the discussions between Defendants and Ms. Hinman regarding the use of the photographs on the Power Point disc in the article and the existence of an agreement allowing pre-publication review by Defendants was never raised until Defendants filed their motion in limine before the trial setting of November

On October 23, 2009, Defendants filed a Motion in Limine seeking to exclude all testimonial evidence of Kristen Hinman except for testimony regarding the issue of the existence of the second set of photographs. Defendants noted how they sought to depose Ms. Hinman in the early stages of discovery but the Court granted the Riverfront Times' motion to quash the subpoena on October 28, 2008 and November 6, 2008. Plaintiff did not file a responsive pleading until after Defendants filed a Memorandum in Further Support of Its Motion in Limine to Exclude Testimony from Kristen Hinman Concerning Anything Other Than the Alleged Second Set of Photographs (Docket No. 136) and four days after the start of the jury trial. Plaintiff filed a Motion to Permit Kristen Hinman to Testify Regarding Certain Conversations with Defendants and Memorandum of Law in Support of the Motion on November 12, 2009 (Docket No. 159).

The Court determined to exclude Ms. Hinman's testimony on the grounds of unfair surprise finding that Defendants had no opportunity to depose Ms. Hinman except in the narrow constraints as ordered by the Court on May 14, 2009. In the proffer, Ms. Hinman testified that none of the doctors ever instructed her not to use the photographs on the disc in the article, and she never agreed to allowing the doctors to review the article prior to publication. Plaintiff's contention that Defendants would not have been unfairly surprised seems somewhat disingenuous given that Plaintiff did not respond to Defendants' Motion in Limine or file a responsive pleading until after the start of the trial and pursuant to this Court's directive. In an effort to avoid an unfair surprise and to achieve

substantial justice in the case, the undersigned determined to exclude Ms. Hinman's testimony except regarding "receipt and use of the photographic image files in question." *See, e.g.*, Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993) (noting the general purpose of the discovery procedures is to eliminate surprise and achieve substantial justice).[4] One clear purpose of the federal discovery rules is to facilitate fact finding and prevent unfair surprise. *See* Fed. R. Civ. P. 26 and Advisory Comm. Notes; Hickman v. Taylor, 329 U.S. 495, 507 (1947).

Exclusion of evidence at trial is within the sound discretion of the trial court. Plaintiff's intent to offer Ms. Hinman's testimony beyond the scope of the deposition taken would constitute unfair surprise. Indeed during Ms. Hinman's deposition when asked "whose decision at the RFT was it to publish photographs of Body Aesthetics' patients?" the Riverfront Times' attorney objected and instructed the witness not to answer noting that "[t]he Court has ruled on this. The only issue is the receipt of the photographs at issue." (Hinman Depo. at 20).

### B. Questioning of Dr. Young Regarding the Medical Malpractice Suit

Plaintiff argues that at trial Defendant's counsel improperly commented and/or alluded to the merits of the medical malpractice suit at least three times. In opening argument, Plaintiff notes how counsel described the medical malpractice suit as one involving a staph infection Plaintiff developed following the surgery whereas the suit involved multiple claims of negligence against Dr. Young and Body Aesthetics including a claim of Dr. Young's negligence in failing to properly diagnose and treat

---

[4]In Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993), the Eighth Circuit held on appeal from a bench trial, that it was not an abuse of discretion for the trial court to permit an undisclosed witness to testify where there was no evidence of bad faith. However, because of the element of surprise and because the evidence in question turned out to be critical to the outcome of the trial court's disposition of the case, the Eighth Circuit vacated judgment and remanded the case to allow the opposing party an opportunity to present rebuttal evidence as it had requested at trial.

Plaintiff's staph infection. In response, Defendants note that the medical malpractice suit did arise out of Plaintiff's development of a staph infection and Plaintiff made no objection to this comment during Defendants' opening statement.

Next, Plaintiff notes how Dr. Young testified that he had been sued for medical malpractice once in response counsel's question asking how many times he had been sued for medical malpractice. Defendants argue such question was proper inasmuch as Plaintiff was attempting to portray Defendants as incompetent medical professionals by releasing numerous photographs of patients to the Riverfront Times. As the remedy to the prejudicial and improper question, Plaintiff's counsel requested the Court to permit limited examination of Dr. Young regarding his admitted failure to properly treat Plaintiff's staph infection. The Court determined the appropriate remedy to be a cautionary instruction directing the jury to disregard both the question and the answer.[5]

Third, in closing argument, defense counsel referenced the possibility of a third lawsuit by Mr. Witzel when arguing that Mr. Carlson was lying about the existence of higher definition photographs. Plaintiff contends that defense counsel's comments were highly prejudicial and conveyed improper and prejudicial information to the jury for which the Court's admonitions were inadequate.

The Court declined Plaintiff's request to allow limited questioning regarding Dr. Young's admitted performance below the standard of care in the earlier medical malpractice suit finding the

---

[5]The Court admonished the jury in a cautionary instruction drafted by Judge Adelman as follows:

> Members of the Jury. As to the last question and answer about malpractice cases, you are instructed that I have determined that both the question and answer must be stricken from the record, and you are instructed to disregard both the question and answer in their entirety. You shall give no weight or draw any inferences from either the question or the answer. Both the question and answer are not evidence in this case, and they must not play any role in your deliberations whatsoever.

probative value of the evidence would outweigh the prejudicial effect on Defendants and opening the medical malpractice case was not appropriate. The Court notes that the jury found in favor of Plaintiff on one count and awarded her $100,000 in damages. To obtain a new trial based on evidentiary error, Plaintiff must show that the outcome of the trial would have been different if the Court had ruled as plaintiff requested and permitted evidence of Dr. Young's admitted fault and negligence for the medical malpractice case. The undersigned finds otherwise.

### C. Jury's Verdict on Invasion of Privacy Count

Plaintiff argues that she is entitled to a new trial on the grounds that the jury's verdict on the invasion of privacy count was against the weight of the evidence. In assessing Plaintiff's argument, the Court must "interpret the record in a light most favorable to the prevailing party, [to determine whether] no reasonable juror could have reached the same conclusion." Structural Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008). A new trial is appropriate when the trial, through a verdict against the weight of the evidence or legal errors at trial, resulted in a miscarriage of justice. White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992).

A review of the evidence presented at trial establishes that Plaintiff has failed to meet this standard required for new trial. Substantial evidence was presented to support the jury's verdict and Plaintiff's argument to the contrary notwithstanding. Further, Plaintiff received the jury instruction she requested over Defendants' objection. Although there was testimony at trial that Plaintiff suffered humiliation and shame as a result of her photographs being published in the Riverfront Times, the Court concludes that the jury's verdict represents neither a miscarriage of justice not the denial of a fair trial. Plaintiff has not established that the evidence is insufficient to support the jury's verdict, nor has she established that the record is fraught with such error that a manifest injustice has resulted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for New Trial (Docket No. 153) is DENIED.

<u>/s/Terry I. Adelman</u><br>
UNITED STATES MAGISTRATE JUDGE

Dated this <u>30th</u> day of September, 2010.