UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  4:08CV197 TIA |
| ) | |
| V. LEROY YOUNG, M.D., ) | |
| ROBERT CENTENO, M.D., ) | |
| C.B. BOSWELL, M.D., ) | |
| and AESTHETIC SURGERY ASSOCIATES, ) | |
| d/b/a BODY AESTHETIC PLASTIC ) | |
| SURGERY & SKIN CENTER, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Quash Plaintiff's Second Amended Notice of Deposition and Subpoena to Produce Documents and for Protective Order. (Docket No. 192). Plaintiff has filed a Memorandum in Opposition. (Docket No. 196). Defendants filed a Reply (Docket No. 64) thereto. All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

Defendants request that the Court quash Plaintiff's Second Amended Notice of Deposition and Subpoena to Produce Documents directed to Bernard Brinker[1] ("Brinker") and for a Protective Order. Defendants contend that the Second Notice and Subpoena require testimony and documents from Defendants' former attorney regarding privileged attorney opinion work produce and disclosure of privileged, confidential and protected work product documents. In response, Plaintiff contends that

---

[1] Bernard Brinker, the proposed deponent, is the attorney who represented Defendants in Plaintiff's separate medical malpractice action. The medical malpractice lawsuit is related to the instant case as it arose from Defendants' treatment of Plaintiff.

Defendants have waived their attorney-client privilege by raising the issue of defense of counsel at trial.

**I.       Attorney-Client Privilege**

The work product doctrine shelters from discovery documents and tangible things that are prepared in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3).  This rule especially protects those documents and tangible things that contain the mental impressions, investigative endeavors, conclusions, opinions, or other legal theories of a party's attorney.  In re Murphy, 560 F.2d 326, 337 (8tn Cir. 1977).  "The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party."  Id. at 334.  This privilege is held and may be asserted by the attorney and the client.  In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007).

The Eighth Circuit has stated the following about the protections that apply to attorney work product:

> There are two kinds of work product - ordinary work product and opinion work product.  Ordinary work product includes raw factual information.  Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories.  Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.  In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in the very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (internal citations omitted).  The work product doctrine does not protect documents from discovery unless they were prepared in anticipation of litigation.  Simon v. G.D. Searle& Co., 816 F.2d 397, 401 (1987); see also Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment ("Materials assembled in the ordinary

course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not" protected from disclosure as work product). The test for determining if documents were prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon, 816 F.2d at 401 (internal citations omitted). "The work product privilege extends beyond the termination of litigation." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 731 (8th Cir. 2002).

## II.     The Work Product Doctrine

Work product protection may be waived. For example, intentionally disclosing the materials to an adversary my waive the protection. Gundacker v. Unisys Corp., 151 F.3d 842, 848(8th Cir. 1998). May 27, 2012The work product protection remains, however, if the client passes the information generated by the attorney to a non-adversarial party. Ayers Oil Co. v. Am. Bus. Brokers, Inc., 2009 WL 4725297 at *3-4 (E.D. Mo. 2009)(finding privilege intact even though the client forwarded an email containing an attorney's legal advice to a non-adversarial third party). An at-issue waiver may occur "where the client places the subject matter of the privileged communication at issue," in that (1) "proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication - for example, when a client uses reliance on legal advice as a defense"; or (2) "a client's testimony refers to a specific privileged document." Baker, 209 F.3d at 1055.

The Missouri Supreme Court "has spoken clearly of the sanctity of the attorney-client privilege." State ex rel. Peabody Coal Co. v. Clark, 863 S.W.2d 604, 607 (Mo. banc 1993) ["The relationship and the continued existence of the giving of legal advice by persons accurately and

effectively trained in the law is of greater societal value ... than the admissibility of a given piece of evidence in a particular lawsuit."). Confidentiality is essential if attorney-client relationships are to be fostered and effective. State ex rel. Great Am. Ins. Co. v. Smith, 574 S.W.2d 379, 383-84 (Mo. banc 1978).

Nonetheless the privilege may be waived, but such waiver must be voluntarily. Smith v. Smith, 839 S.W.2d 382, 385 (Mo. Ct. App. 1992).

> For example, "anticipatory waiver of the attorney-client privilege may occur where the client places the subject matter of the privileged communication in issue in the litigation." This commonly arises when a party claims "reliance on legal advice as an element of a claim or defense."

State ex. rel Behrend v. Neill, 337 S.W.3d 727, 729 (Mo. Ct. App. 2011) (quoting State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W. 2d 832, 837 (Mo. Ct. App. 1995)).

**III.   Discussion**

Although Defendants did not waive their attorney-client privilege by their pleadings by pleading advice of counsel as a defense in their Answer (ECF No. 14), the Court finds they waived the privilege during their testimony at trial.

During a side bar at the trial, the following exchange occurred between the Court and defense counsel regarding why Defendants failed to take action after the publication of the pictures:

> Mr. Bub: He was represented by counsel from the very get-go when this happened and I think that some of these questions are going to be answered really do get into attorney/client privilege as to what he was supposed to do and didn't do because they were relying on the advice of counsel at that point.
>
> The Court: Are you representing to me he told her about –
>
> Mr. Bub: Yes. Yeah. I mean that's going to be his response to why he didn't contact Judy Russell at the time because he said, "Under the advise of counsel, we did not."

(ECF No.176 at 14-15, Trial Transcript).  The Court permitted Defendants' counsel to examine Dr. Young regarding his discussions with Mr. Brinker:

> Mr. Bub: Now when this happened, Miss Doe was suing you and the practice for malpractice; correct?
>
> Leroy Young: Correct.
>
> Mr. Bub: At time she was being represented by Mr. Witzel?
>
> Leroy Young: Correct.
>
> Mr. Bub: you were being represented by a lawyer by the name of Bernie Brinker?
>
> Leroy Young: Correct.
>
> Mr. Bub: At that point when you found out, did you contact Mr. Brinker?
>
> Leroy Young: As soon as I saw the pictures, I put the article down, picked up the phone and called him and told him that I thought her pictures were in there and he told me not to do anything, that he would do the necessary steps to deal with it.
>
> (ECF No.176 at 65-66, Trial Transcript).
>
> When asked about why he did not contact Ms. Hinman and ask her to return the disc, Dr.

Centeno testified as follows:

> Mr. Witzel: Did you ask her for the disk back?
>
> Robert Centeno: No, I did not.
>
> Mr. Witzel: Actually a disk had been furnished to her, right?
>
> Robert Centeno: Yes.
>
> Mr. Witzel: And that had patients' pictures on it?
>
> Robert Centeno: Yes.
>
> Mr. Witzel: Why didn't you ask her for the disk back?

> Robert Centeno: Well, frankly at that point I was very concerned and upset that we had already been engaged in litigation and that any action to get information or do anything would be misconstrued by someone like yourself, frankly. So I waited so we could discuss it with the rest of the partners.
>
> Mr. Witzel: Well, someone like me might ask the question, what about all the other patients? Did you ask to get the disk back so that the Riverfront Times wasn't sitting there holding a disk of the patients' pictures?
>
> Robert Centeno: We relied on the advice of our counsel at that time on how to handle the matter.
>
> Mr. Witzel: Doctor –
>
> Robert Centeno: We had already made the biggest mistake of our professional careers, Mr. Witzel, and we were relying on the advise of counsel.

(ECF No.177 at 94-95, Trial Transcript).

When asked about contacting Ms. Hinman regarding returning the disk, Dr. Centeno testified as follows:

> Mr. Witzel: Did you ever call Ms. Hinman after that first day, that first day being April 20th, 2006?
>
> Robert Centeno: Yes.
>
> Mr. Witzel: When did you call her next?
>
> Robert Centeno: I called her again after Dr. Young's deposition in the med mal case. He returned to the office and said that Mr. Brinker has advised that we get the copy of the disk back. And Dr. Young asked me if I could give Kristen a call. And I did that.

(ECF No.177 at 99, Trial Transcript).

After thorough consideration of the motion and the briefs in support and opposition and the argument of counsel, the undersigned finds Defendants have waived the attorney-client privilege by asserting advice of counsel relating to their failure to seek the return of the disc at the time of

publication of the article. The waiver is narrowly construed, and thus counsel is permitted to inquire only about Mr. Brinker's advise relating to the retrieval of the disc from the Riverfront Times. The undersigned finds this testimony is relevant to the Defendants' conduct in failing to attempt to retrieve the disc from the Riverfront Times after the publication of the article. "'Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" Cititmortgage, Inc. v. Just Mortgage, Inc. 2011 WL 1626584, *1 (E.D. Mo. 2011) (quoting Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 382 (D.Kan 2005) (internal quotation omitted)).

With respect to the communications between Mr. Brinker and Ms. Hinman and documents regarding such communications, the undersigned finds those conversations to be protected by the work-product doctrine. "Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (citing In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973) (attorney's personal recollections, notes and memoranda from interviews are absolutely protected work product). Long standing Eighth Circuit precedent provides that the work product doctrine protects documents and attorneys' opinions prepared for a party in previous litigation from disclosure in subsequent litigation. In re Murphy, 560 F.2d 326, 334 (8th Cir. 1977). Opinion work product "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." Baker, 209 F.3d 1051, 1053-54 (citing In re Murphy, 560 F.2d at 336)).

"Further, '[d]iscovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party.'" Murphy v. Kmart Corp., 259 F.R.D. 421, (D.S.D. 2009)

(quoting Upjohn Co. v. United States, 449 U.S. 383, 399-400 (1981)) (citing generally In re Grand Jury Proceedings, 473 F.2d 840, 849 (8th Cir. 1973) ("Generally, if a witness is available to the party seeking discovery of his statement to opposing counsel, such discovery should not be allowed."). The undersigned finds that the testimony sought by Plaintiff and the document requests consist of information that can be obtained from either Kristen Hinman or the agents of the Riverfront Times, and there has been nothing submitted to show such witnesses are not available. Baker, 209 F.3d at 1053-54.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Quash Plaintiff's Second Amended Notice of Deposition and Subpoena to Produce Documents and for Protective Order. (Docket No. 192) is **GRANTED in part and DENIED in part**. Plaintiff may depose Bernard Brinker regarding his advise relating only to the retrieval of the disc from the Riverfront Times.

Dated this  30th   day of May, 2012.


        /s/Terry I. Adelman  
UNITED STATES MAGISTRATE  JUDGE